# Cox *v.* Pennsylvania Railroad Company, Appellant.

*Common carriers—Railroad companies—Failure to furnish siding—Damages—Car supply—Damages for delay—Treble damages.*

1. In an action to recover damages for injuries sustained by the owners of a coal lease, in consequence of the failure of the defendant railroad company to supply them with a siding, the lower court, following the decision in Cox v. Penna. Railroad Co., 240 Pa. 27, fixed the damages upon the basis of the cars, which, in accordance with the allotment then in use, would have been supplied to the plaintiffs' mine had the siding been in operation, and not upon the basis of the capacity of the mine and fixed the loss upon dumped coal which could have been shipped, on the basis of car distribution as in the case of unmined coal; upon the plaintiffs' filing a remittitur of all damages in excess of this amount the court trebled the damages so found, and entered judgment for the plaintiff, upon which interest was allowed from the date of the verdict. *Held,* no error.

*Practice, Supreme Court—Assignments of error—Defective assignments.*

2. Assignments of error which state that the court has erred in this or that matter, in the language of counsel, without setting forth in precise terms the order or action complained of, are improper in form.

Argued May 24, 1915.   Appeal, No. 7, May T., 1915, by defendant, from judgment of C. P. Dauphin Co., Jan. T., 1907, No. 577, on reduced verdict for plaintiff, in case of D. W. Cox and E. E. Lawton v. Pennsylvania Railroad Company.   Before Brown, C. J., Mestrezat, Potter, Elkin, Stewart, Moschzisker and Frazer, JJ.   Affirmed.

Trespass to recover treble damages for injuries sustained in consequence of the refusal of a railroad company to furnish siding connection.   Before McCarrell, J.

The facts appear in Cox v. Penna. R. R. Co., 240 Pa. 27, and in the following opinion of McCarrell, J., upon defendant's reinstated motion for a new trial:

The Supreme Court upon appeal reversed the judgment in this case solely for the purpose of reinstating the motion for a new trial, which reinstated motion is now to be disposed of.   In disposing of the original motion for a new trial we reduced the verdict, believing that under the evidence justice required that this should be done.   The Supreme Court concluded that the reduction so made was insufficient, for the reason that we apparently allowed a recovery on the basis of almost the entire estimated product of plaintiffs' mine, without making any allowance for the lack of cars to transport the coal mined in the region where plaintiffs' mine was located.   We made a general reduction of one-fifth from the amount returned by the jury as single damages, intending this to cover both the reasonably certain diminution in the amount of product by reason of delays and difficulties in mining, as also on account of the impossibility of procuring the necessary cars.   The Supreme Court finds that we practically made no deduction because of the lack of car supply, and uses the following language (240 Pa. 27, 36) :—

"It being a period of car shortage plaintiff could claim only the same proportion of cars owned and controlled

by the defendant as was allowed to other shippers based on the productive capacity of the several mines. If there was evidence that an equitable rate of distribution had been charged, and from our examination of the record we think there was, such rate would be a fixed factor in the case for the determination of the amount of coal that would be shipped. The fact that the amount of remitter ordered by the court is so much·less than it would have been had the rate of car distribution been considered is to our mind convincing that the evidence touching this matter was overlooked, with the result that we have here a judgment based on the productive capacity of the mine, whereas only so much of the coal could have been marketed as would have been accommodated in the cars which plaintiffs could rightfully have demanded of the defendant. A new trial of the case ought not to be necessary, but however this may be what for the present we must regard as a manifest injustice to the defendant calls for correction, and a reversal of judgment is therefore required only however that the motion for a new trial in the court below may be reinstated."

The evidence thus overlooked is manifestly exhibit No. 43 offered by plaintiffs and printed at pages 326 and 327 of the Appendix to Appellant's Paper Book. The purpose for which this exhibit was offered is stated by plaintiff's counsel at page 154 of said Appendix, as follows:—

"May it please the court, this is a paper which shows the estimated capacity of the district in which the plaintiffs' mine is situated, for the years 1902, 1903, 1904, 1905 and 1906, together with the number of cars actually placed during each of the said years in the district and the percentage of the cars placed to the estimated capacity as given; it being understood that the evidence admitted is subject to objection as to materiality and relevancy...... This is offered particularly to show the number of cars to which the mine in question, if it

has a siding connection, would have been entitled to move its product."

At page 326 is found the following agreement and admission of the parties:—

"It is admitted by the parties to this cause that the figures show the estimated capacity of the district in which the plaintiffs' mine is situated for the years 1902, 1903, 1904, 1905 and 1906, with the number of cars actually placed during each of the said years in the district and the percentage of cars placed to the estimated capacity as given; it being understood that the facts admitted are subject to objection as to materiality and relevancy."

It thus appears that the exhibit in question was offered by the plaintiffs to show the number of cars to which plaintiffs would have been entitled for use at their mine if the siding had been furnished, and that both parties agreed that this exhibit showed the number of cars actually placed during each of the said years in the district and the percentage of cars placed to the estimated capacity as given. When we disposed of the original motion for a new trial we overlooked the purpose of the offer and the admission of the parties with respect thereto, and reached a conclusion which is in accordance with the testimony of Mr. Johnson, district superintendent, printed at page 242 of Appellant's Appendix, showing the exact amount of coal shipped over the Tyrone Division during the years in question.

In accordance with the decision of the Supreme Court, it is our duty to correct the error into which we fell, and this will require us to make a further reduction of the verdict for single damages. According to Exhibit 43, which, under the decision of the Supreme Court, furnishes the fixed standard for ascertaining the car supply in the years 1903 and 1904, we must conclude that in 1903 the car supply was only 22.7 per cent. of the capacity of the mines, and in 1904 the car supply was only 18.2 per cent. of this capacity. The product of plain-

tiff's mine, as estimated by Mr. Lawton, whose estimate was assented by Mr. Quinn, the quantity was ascertained upon the assumption that a double turn could have worked continuously day and night, and that nothing would have occurred to prevent the continuous prosecution of the mining.   We were of opinion when we disposed of the original motion for a new trial that this estimate was too high, because common experience teaches us that there necessarily would have been delays and difficulties which would have prevented the continuous operation of the mine.   We made a general reduction of one-fifth to cover this and the lack of car supply. At present we are not called upon to make any allowance for lack of car supply, because we shall apply the fixed standard designated by the Supreme Court, and found in Exhibit 43.   We will, however, deduct from Mr. Lawton's estimate of the capacity of the mine ten per cent., and make our calculation as to the single damages upon this basis, using the prices which were agreed upon at the trial.   The discrimination complained of by plaintiffs was amply proved by the evidence and the record upon this subject has been duly approved by the Supreme Court.   We will, therefore, in making our computation of the amount of single damages due at the date of the verdict in this case make an allowance for the delay in payment not exceeding six per cent. per annum for the loss ascertained for each month.   From this calculation it appears that the total loss sustained by plaintiffs by reason of defendant's failure to supply a siding for their shipments of coal up to the date of the verdict is $9,552.09.   In addition the plaintiffs claim for loss sustained upon coal mined prior to January, 1903, and which was not shipped because no siding facilities were furnished.   Mr. Lawton testified that in his opinion the coal thus mined and ready for shipment was 1,001 tons.   Mr. Womelsdorf, a witness for the defendant, testified that he made an estimate from figures given by Mr. Lawton in December, 1902, in regard to the length and width of the various headings, and that he

estimated the quantity of coal taken out at about 1,001 tons. He agreed with Mr. Lawton's estimate on this subject, and stated that "it was originally from twelve to fourteen hundred, and then the actual figures brought it down to 1,001, and my figures agree with that." Apparently the testimony for both plaintiffs and defendant fixes the quantity of dump coal at 1,001 tons. Mr. Lawton testified that some sales had been made of this dump coal amounting in all to 222 tons and 14 cwt. Sales were made to various parties at various prices, and Mr. Lawton fixed the total amount received therefor at $200.66. Counsel for plaintiffs contend that in disposing of the original motion for a new trial we made a mistake in estimating the loss on this dump coal. It appears that we allowed the plaintiffs for only 779 tons of coal, and that we charged against the market price of this coal in January, 1903, the market price of 779 tons in 1905, and allowed them as loss on dump coal only $3,308.75. This apparently was an error, for the testimony is clear that 1,001 tons of dump coal was agreed upon by Mr. Lawton and Mr. Womelsdorf in their estimates. We have carefully read the testimony of Mr. Lawton and all the other testimony on this subject. He testifies that the only part of this dump coal which was sold was the 222 tons and 14 cwt. He very clearly states that this is all the coal which was sold by the plaintiffs from the pile on the dump, and that all the remainder was a total loss, that it was injured by exposure to the air, and was not fit for anything but ballast. We are therefore constrained to conclude that we made a mistake against the plaintiffs in computing the loss upon dump coal, and we now find that their claim for this loss is as stated by them ....................................... $5,304.84

To this we add an allowance not exceeding
  6 per cent. per annum from January, 1903,
  to the date of the verdict ..............    1,697.54
  _____
Making the total loss which plaintiffs are en-
  titled to recover on account of dump coal. $7,002.38

The claim of plaintiffs for single damages at the date of the verdict, May 13th, 1908, may properly be stated as follows:—

| | |
|---|---|
| Loss upon quantity of coal which could have been mined and shipped | $9,552.09 |
| Loss on dump coal | 7,002.38 |
| Total loss | $16,554.47 |

We have most carefully considered the entire case and have examined the various calculations submitted to us in behalf of the plaintiffs and in behalf of the defendant, and have been led to the conclusion that the verdict for single damages should have been in the sum of $16,-554.47, instead of $27,851.60, as reduced by us upon the original motion for a new trial.

Upon defendant's motion for reconsideration of the court's order, reducing the verdict and entering judgment thereon, McCARRELL, J., filed the following opinion:

A motion has been made for the reconsideration and change of our order of April 25th, 1914, reducing the verdict in this case.

Complaint is made that we erred in deducting ten per cent. from Mr. Lawton's estimate as to the productive capacity of plaintiffs' mine. We are not satisfied that we were in error in making this reduction.

It is next contended that in our estimate we computed the cars to which plaintiffs were entitled as being of 25 tons capacity instead of 33 tons. An examination of the calculation will show we estimated the capacity of the cars at 33 tons each, in accordance with Mr. Creighton's testimony.

Complaint is also made that we were in error in applying the percentage of car supply referred to in Exhibit 43, for the reason that from an examination of all the other testimony in the case, particularly that of Mr. Johnson, defendant's superintendent, page 242, it appears that a larger percentage of cars was actually used for the transportation of coal in the years 1903 and 1904.

Our original order reducing the verdict in this case was made in accordance with Mr. Johnson's testimony, although not especially referred to. He stated that the actual quantity of coal from the region in which plaintiffs' mine was located was 2,601,556 tons in 1903. To transport this quantity there must have been used 78,835 cars of 33 tons capacity. The estimated tonnage according to the testimony of Mr. Lawton from plaintiffs' mine during the year 1903 was 64,464 tons. A ratable distribution of cars thus used would apparently have been according to the following proportion:—

$$2,601,556 \quad : \quad 64,464 \quad :: \quad 78,835 \quad : \quad 1,953.$$

If plaintiffs' mine had received 1,953 cars of 33 tons capacity, they would have carried 64,449 tons and taken to the market all but 15 tons of the product of plaintiffs' mine, according to Mr. Lawton's estimate. Upon examination of our conclusion, however, by the Supreme Court, we were found to be in error, because we had overlooked and had not given proper weight to the testimony which established a "fixed factor" with respect to car supply. This "fixed factor" is manifestly Exhibit No. 43. The purpose for which this exhibit was offered has been stated in our opinion filed in connection with our order of April 25th, 1914, but may properly here be repeated, as found on pages 326-327 of the Appendix to Appellant's Paper Book. The purpose of the offer is thus stated by plaintiffs' counsel:—

"May it please the court this is a paper which shows the estimated capacity of the district in which the plaintiffs' mine is situated for the years 1902, 1903, 1904, 1905 and 1906, together with the number of cars actually placed during each of the said years in the district and the percentage of the cars placed to the estimated capacity as given; it being understood that the evidence admitted is subject to objection as to materiality and relevancy........ This is offered particularly to show the number of cars to which the mine in question, if it had a siding connection, would have been entitled to move its product."

At page 326 is found the following agreement and admission of the parties:

"It is admitted by the parties to this cause that the figures show the estimated capacity of the district in which the plaintiffs' mine is situated for the years 1902, 1903, 1904, 1905 and 1906, with the number of cars actually placed during each of the said years in the district and the percentage of cars placed to the estimated capacity as given; it being understood that the facts admitted are subject to objection as to materiality and relevancy."

It thus appears that the exhibit was offered particularly to show the number of cars to which plaintiffs would have been entitled if the siding connection had been made, and the agreement as to the effect that the exhibit shows the number of cars actually placed during the years 1902, 1903, 1904, 1905 and 1906, together with the percentage of cars placed to the estimated capacity as given.   In the light of this offer and this agreement the Supreme Court has determined that Exhibit No. 43 established a "fixed factor" for the car supply to which plaintiffs would have been entitled if they had been shipping coal in 1903 and 1904, and we are bound to follow the conclusion thus reached by the court of last resort. Presumably the Supreme Court had its attention called to the apparent discrepancy between Mr. Johnson's testimony at page 242 and the statements contained in Exhibits 42 and 43, and after considering the same concluded that under the offer and agreement above referred to, Exhibit 43 must be accepted as establishing the proper percentage of distribution of the car supply. It will be noticed that the agreement states that the exhibit shows the number of cars actually placed in this region with respect to mine capacity during the years in question.   Thus it seems to be admitted that the cars were actually distributed in 1903 and 1904 according to the percentage contained in Exhibit 43.   If this was the percentage of distribution established for those years,

according to which distribution of cars was made to all shippers, the plaintiffs, if their mine had then been opened could not have claimed any larger percentage for themselves.  We therefore are unable to adopt the carefully prepared schedule, marked "Schedule C," and hereto attached, prepared by plaintiffs' counsel, based upon Mr. Johnson's testimony as to total shipments of coal and capacity of cars.  The Supreme Court has apparently decided that this is accurate.

It was contended at the argument that our allowance for delay in paying damages is incorrect and plaintiffs' counsel did not seriously contend that it was entirely accurate.  The suit is to recover treble damages fixed by statute to make an allowance for delay in payment prior to verdict and then treble the verdict would result in compelling the defendant to pay more than the statutory penalty.  We are therefore satisfied that the addition of allowance for delay cannot be permitted and the amount so allowed must be entirely disregarded.

Counsel for defendant contended that the estimates made by Mr. Lawton were greatly exaggerated, while plaintiffs' counsel insisted that they were accurate and ought not to be reduced by the ten per cent. which we deducted therefrom.  After carefully considering the whole subject as to what amount of coal could with reasonable certainty have been mined by the plaintiffs during the period in question, we have concluded to adopt the capacity fixed by Exhibit No. 43, in which defendant rates the capacity of the mine during the development period or period of opening and early shipments, as follows:

"From placing of siding November 14th, 1904, to February 15th, 1905, development rating of 2 and 3 cars per day.  Cars here meaning hopper cars without reference to their capacity, their estimated capacity at the time being 25 tons, but being subject in practice to an overloading of about 33 tons; steel cars counting as 2 hoppers.  From February 15th, 1905, to November 12th,

1905, 6 cars per day; from November 12th, 1905, to June 1, 1906, 3 cars of 35 tons capacity; from June 1, 1906, to November 1, 1906, 7 cars of 35 tons capacity; from November 1, 1906, 8 cars of 35 tons capacity."

This is the defendant's estimated car capacity of plaintiffs' mine and the plaintiffs are entitled to the percentage of car supply in 1903 and 1904 shown by Exhibit 43. We have therefore prepared a new schedule hereto attached and marked "B," giving the tonnage and amount of loss during the various months for which claim is made in this case.

At the argument of the motion to reconsider it was contended by the defendant that we were in error in allowing the plaintiffs the total value of the coal upon the dump in January, 1903, and that plaintiffs were entitled to recover only for such loss upon the dump coal as would have been sustained upon the quantity of coal which could have been shipped with the proper allotment of car supply. It is manifest that the percentage of cars to which plaintiffs were entitled under Exhibit 43 would not have enabled them in January, 1903, to have carried to market the dump coal and the coal mined during that month. Apparently the defendant is not chargeable with loss upon this coal estimated at the prices prevailing in January, 1903. The defendant contends that the most which plaintiffs can claim with respect to this dump coal is an allowance of 22.7 of cars in each month until the coal was shipped, and suggests that the loss upon this coal is properly estimated in the following table:—

| 1903. | Difference in price between 1903-4 and 1905-6. | Loss. |
|---|---|---|
| January, 250 | $4.25 | $1,062.50 |
| February, 250 | 3.50 | 875.00 |
| March, 250 | 1.70 | 425.00 |
| April, 251 | .48 | 120.48 |
| | | $2,482.98 |

We will adopt this suggestion of defendant's counsel and make an allowance accordingly for loss on dump coal.

We have carefully reconsidered our estimate of the single damages sustained by the plaintiffs according to all the evidence and the decision of the Supreme Court as to the "fixed factor" of car supply, and conclude that the single damages should have been in the sum of $11,-845.27 instead of $27,851.60 as reduced by us upon the original motion for a new trial. It is therefore ordered that if the plaintiffs within five days from the filing hereof shall consent in writing that the verdict for single damages shall be reduced to $11,845.27, the prothonotary is now directed upon the filing of such consent, to note upon the record that the reinstated motion for a new trial is overruled and that judgment is now entered upon the verdict for single damages, as thus reduced, in favor of the plaintiffs and against the defendant for the sum of $35,535.81, being the treble damages under the act of assembly upon which this action is based; said judgment to bear interest from May 13th, 1908, to date of the verdict. If the plaintiffs shall not so consent to the reduction of the verdict for single damages, then and in that event the prothonotary is directed to note upon the record that a new trial is granted.

Verdict for plaintiffs for single damages **for $34,-814.50.**

The court subsequently reduced the verdict to $11,-845.27, trebled the verdict as reduced, and entered judgment thereon with interest from the date of the verdict. Defendant appealed.

*Errors assigned* were various computations of the court, and the judgment. None of the assignments set forth in precise terms the order or action of the lower court complained of.

*John G. Johnson* and *Charles H. Bergner,* for appellant.

*C. L. Bailey,* of *Wolfe & Bailey,* for appellee.

PER CURIAM, July 3, 1915:

We have not been convinced that the judgment below did any injustice to the appellant, and may add that not one of the six assignments of error is in compliance with our rules.

Judgment affirmed.